http://www.va.gov/vetapp16/Files4/1630394.txt

Citation Nr: 1630394 
Decision Date: 07/29/16 Archive Date: 08/04/16

DOCKET NO. 14-17 669 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Houston, Texas

THE ISSUES

1. Entitlement to service connection for a deviated septum.

2. Entitlement to service connection for sleep apnea, to include as secondary to a deviated septum.

REPRESENTATION

Veteran represented by: Disabled American Veterans

WITNESS AT HEARING ON APPEAL

The Veteran

ATTORNEY FOR THE BOARD

M. D. Bruce, Associate Counsel

INTRODUCTION

The Veteran served on active duty from May 2006 to May 2007, with a period of active duty for training from January 1992 to April 1992.

These matters come before the Board of Veterans' Appeals (Board) on appeal from October 2011 and May 2012 rating decisions by the Department of Veterans Affairs (VA) Regional Office.

In May 2016, the Veteran testified at a Board videoconference hearing before the undersigned Veterans Law Judge (VLJ). A transcript of that hearing is of record.

Since the agency of original jurisdiction (AOJ) last considered the appeal the Veteran submitted additional evidence along with signed waiver of initial AOJ review. Accordingly, initial review of the evidence by the Board is appropriate. See 38 U.S.C.A. § 7105(e) (West 2014).

The issue of entitlement to service connection for sleep apnea is addressed in the REMAND portion of the decision below and is REMANDED to the AOJ.

FINDING OF FACT

The most probative evidence is against a finding that the Veteran's deviated septum is related to service.

CONCLUSION OF LAW

The criteria for service connection for a deviated septum have not been met. 
38 U.S.C.A. §§ 1110, 5107 (West 2014); 38 C.F.R. § 3.303 (2015).

REASONS AND BASES FOR FINDING AND CONCLUSION

I. Duties to Notify and Assist

VA has a duty to notify and assist a claimant in the development of a claim. 38 U.S.C.A. §§ 5100, 5102, 5103, 5103A, 5106, 5107, 5126 (West 2014); 38 C.F.R. §§ 3.102, 3.156(a), 3.159, 3.326(a) (2015). The duty to notify was satisfied by a July 2011 letter. In addition, the Board finds that the duty to assist a claimant has been satisfied. Service treatment records (STRs) are on file, as are various post-service medical records.

As there is no allegation that the hearing provided to the Veteran was deficient in any way, further discussion of the adequacy of the hearing is not necessary. Dickens v. McDonald, 814 F.3d 1359 (Fed. Cir. 2016). 

The Board notes that a VA examination and nexus opinion have not been obtained concerning the claim decided herein. However, there is no competent evidence that the Veteran had a deviated septum during service or that it is related to service. The only evidence suggesting a relationship is unsupported lay assertions that the disability had onset as a result of an in-service injury. As the Board finds the evidence is against a finding that the Veteran's deviated septum began as a result of the purported in-service injury and there is no medical question for resolution, a VA examination is not required. 38 C.F.R. § 3.159(c)(4); see McLendon v. Nicholson, 20 Vet. App. 79 (2006); see also Waters v. Shinseki, 601 F.3d 1274, 1278 (Fed. Cir. 2010) (noting that a conclusory lay statement that a current condition is related to service is insufficient to warrant a medical examination because it would "eliminate the carefully drafted statutory standards governing the provision of medical examinations and require the Secretary to provide such examinations in virtually every veteran's disability case"). 

After a careful review of the file, the Board finds that all necessary development has been accomplished, and therefore appellate review may proceed without prejudice to the Veteran. See Bernard v. Brown, 4 Vet. App. 384 (1993). 

II. Analysis

Service connection may be established for a disability resulting from disease or injury incurred in or aggravated by active service. 38 U.S.C.A. § 1110; 38 C.F.R. 
§ 3.303 (2015). Evidence of continuity of symptomatology from the time of service until the present is required where the chronicity of a chronic condition manifested during service either has not been established or might reasonably be questioned. 38 C.F.R. § 3.303(b); see also Walker v. Shinseki, 708 F.3d 1331, 1340 (Fed. Cir. 2013) (holding that only conditions listed as chronic diseases in § 3.309(a) (2015) may be considered for service connection under 38 C.F.R. § 3.303(b)). Regulations also provide that service connection may be granted for any disease diagnosed after discharge, when all the evidence, including that pertinent to service, establishes that the disability was incurred in service. 38 C.F.R. § 3.303(d). 

Generally, in order to prove service connection, there must be competent, credible evidence of (1) a current disability, (2) in-service incurrence or aggravation of an injury or disease, and (3) a nexus, or link, between the current disability and the in-service disease or injury. See, e.g., Davidson v. Shinseki, 581 F.3d 1313 (Fed. Cir. 2009); Pond v. West, 12 Vet. App. 341 (1999).

The Board has reviewed all the evidence in the record. Although the Board has an obligation to provide adequate reasons and bases supporting this decision, there is no requirement that the evidence submitted by the Veteran or obtained on his behalf be discussed in detail. Rather, the Board's analysis below will focus specifically on what evidence is needed to substantiate the claim and what the evidence in the claims file shows, or fails to show, with respect to the claim. See Gonzales v. West, 218 F.3d 1378, 1380-81 (Fed. Cir. 2000); Timberlake v. Gober, 14 Vet. App. 122, 128-30 (2000). When there is an approximate balance of evidence for and against the issue, all reasonable doubt will be resolved in the Veteran's favor. 38 U.S.C.A. § 5107; 38 C.F.R. § 3.102; Gilbert v. Derwinski, 
1 Vet. App. 49 (1990).

The Veteran is seeking service connection for a deviated septum, which he contends resulted when he was hit in the face with a soccer ball in 2006 while at a mobilization site prior to deployment. As an initial matter, the evidence shows that the Veteran has been treated for a deviated septum during the pendency of the appeal and that this condition is noted in his VA treatment records. Accordingly, the first element of service connection, a current disability, is met. Thus, the question becomes whether the Veteran's deviated septum is related to service.

The Veteran's service treatment records do not reflect any complaints, treatment, findings or diagnosis consistent with a deviated septum or nose injury. The Veteran has asserted, however, that he was hit in the face by a soccer ball which resulted in a bloody nose and what he believes to be a deviated septum. He has submitted statements from fellow servicemen to this effect. He has also submitted a statement from his wife, in which she contends that she noticed the Veteran had a crooked nose when he returned home. Furthermore, the Veteran reports that he sought treatment following the injury, but was told he could not miss training in order to receive treatment. In any event, the record reflects that the Veteran was treated beginning in October 2006, a few months subsequent to the reported nasal injury, for a broken leg. In the course of treatment, the Veteran provided information regarding several other medical conditions or injuries, including cerumen impaction, plantar fasciitis, back pain, and tooth sensitivity, but there is no indication that he ever reported having recently suffered any nasal injury, let alone a severe one. He denied ear, nose, or throat trouble, and his nose was noted to be "normal" upon medical examination in October 2006.

Upon review of the record, the Board notes that the Veteran was not shown to have a deviated septum or nasal injury in service, and a deviated septum is not noted in his treatment records until February 2012, roughly five years after separation from service. In fact, an August 2011 medical opinion with respect to another claim and rendered by an ear, nose, and throat (ENT) specialist, Dr. W.S., specifically indicates that the Veteran's septum was midline upon examination. Although the Veteran received other treatment during which his nose and respiration were assessed after service, including for sleep apnea, a septal deformity was first noted in treatment records in February 2012, at which point the Veteran was immediately referred to an ENT specialist and after which the deviated septum was noted frequently until surgical correction in May 2012. A Disability Benefits Questionnaire completed at the request of the Veteran, presumably by a physician, in August 2012 describes the history of the Veteran's septal deformity as nasal trauma in 2006 during active duty, but there is no indication this assessment is based on any objective evidence other than the Veteran's reported history. 

To the extent that the Veteran believes that his deviated septum is related to the reported in-service soccer accident, as a lay person, the Veteran has not shown that he has specialized training sufficient to render such an opinion. See Jandreau v. Nicholson, 492 F.3d 1372, 1376-77 (Fed. Cir. 2007) (noting general competence to testify as to symptoms but not to provide medical diagnosis). While the Veteran, as well as his friends and family who have submitted lay statements, are competent to describe the soccer accident and there is no reason to doubt their credibility, the evidence does not demonstrate that they are competent to diagnose a deviated septum or other specific nasal injury. In this regard, the diagnosis of a deviated septum requires medical testing and expertise to determine. Accordingly, the opinions of the Veteran and his friends and family as to the diagnosis or etiology of his deviated septum are not competent medical evidence.

Weighing the lay assertions regarding an in-service injury with the evidence suggesting that no such injury was found until several years after service and that the Veteran's nose was reported to be normal until 2012, the Board finds there is no competent evidence that the Veteran incurred a deviated septum or broken nose in service. Accordingly, as the preponderance of the evidence is against the claim, service connection is denied. 

In reaching this decision, the Board has considered the applicability of the benefit of the doubt doctrine. However, the preponderance of the evidence is against the Veteran's claim for service connection for a deviated septum. As such, that doctrine is not applicable in the instant appeal, and the claim must be denied. See 38 U.S.C.A. § 5107(b); Ortiz v. Principi, 274 F.3d 1361, 1364 (Fed. Cir. 2001); Gilbert, 1 Vet. App. at 55-56.

ORDER

Entitlement to service connection for a deviated septum is denied. 

REMAND

While further delay is regrettable, additional development is necessary with respect to the Veteran's claim for entitlement to service connection for sleep apnea.

While service connection for sleep apnea as secondary to a deviated septum may no longer be granted as a result of the Board's decision on that issue, the Veteran has also alleged that sleep apnea onset in service. In that respect, the Veteran's VA treatment records reflect that sleep apnea was listed as a suspected diagnosis as early as April 2008, less than a year after separation from service, as a result of the Veteran's complaints of snoring and insomnia. The records indicate that the Veteran was referred to a sleep clinic at that time. There was no definitive diagnosis of sleep apnea until a sleep study was completed in November 2011. However, an April 2011 record of a sleep clinic consultation notes that the Veteran first underwent an overnight sleep study in 2008. As records of the 2008 sleep clinic consultation and study are not of record, the Board finds remand is warranted so that they may be obtained. 

Updated VA treatment records should also be associated with the claims file. 38 U.S.C.A. § 5103A(c).

Accordingly, the case is REMANDED for the following actions:

1. Obtain and associate with the record any records of the 2008 sleep study and sleep clinic consultation. If such records do not exist or are not available, the Veteran and his representative should be so notified and the claims file annotated to reflect as such.

2. Obtain and associate with the file updated VA treatment records dating since February 2014.

3. After completing the requested actions, and any additional actions deemed warranted, to include scheduling an examination if necessary, the AOJ should readjudicate the claim on appeal. If the benefit sought on appeal remains denied, the Veteran and his representative should be furnished a supplemental statement of the case and given the opportunity to respond thereto. The case should then be returned to the Board for further appellate consideration, if in order.

The Veteran has the right to submit additional evidence and argument on the matter the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999).

This claim must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board or by the United States Court of Appeals for Veterans Claims for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C.A. §§ 5109B, 7112 (West 2014).

______________________________________________
Nathan Kroes
Veterans Law Judge, Board of Veterans' Appeals

Department of Veterans Affairs